IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESS T. LAMMERS,<br><br>              Plaintiff,<br><br>vs.<br><br>COUNTY OF PHELPS NE, PHELPS COUNTY CORRECTIONS, and PENNY GREGG, Admin;<br><br>              Defendants. | **8:24CV226**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Jess T. Lammers ("Plaintiff" or "Lammers"), filed his Complaint on June 17, 2024, when he was in the custody of Phelps County Corrections ("PCC"). Filing No. 1. Plaintiff filed a notice of address change on December 5, 2024, Filing No. 13, indicating he was no longer incarcerated, and also filed a Motion for Leave to Proceed in Forma Pauperis, Filing No. 12. Upon review of Plaintiff's motion, the Court finds that Plaintiff is financially eligible to proceed in forma pauperis as a non-prisoner. The Court will now conduct an initial review of Plaintiff's Complaint, Filing No. 1, pursuant to 28 U.S.C. § 1915(e)(2).

**I. SUMMARY OF COMPLAINT**

Plaintiff sues Phelps County, Nebraska ("County"), PCC, and PCC Admin Penny Gregg ("Gregg") (collectively "Defendants"), alleging claims of "HIPPA[1] violations, medication errors, and ADA violations." Filing No. 1 at 1. Plaintiff appears to assert his claims, at least in part, pursuant to the Nebraska Political Subdivision Tort Claims Act ("PSTCA"), Neb. Rev. Stat. §§ 13-901 to 13-928. Id.

---

[1] The Court understands "HIPPA" to mean the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d to 1320d-9.

Plaintiff alleges that from May 12, 2020, through June 6, 2024, PCC "has made voluminous medication admin errors and violated HIPPA" based on the following incidents:

1) An unnamed "CO," or correctional officer, tried to give Plaintiff another inmate's Xanax, or alprazolam, medication;

2) Another unnamed CO tried to give Plaintiff "Hydroxazine[,] which almost all ICE[2] detainees are prescribed," and, as a result, Plaintiff "contacted ICE under T 28-USC-1361 as an action to compel an internal investigation to which Lammers received a factious [sic] (aka smart-ass) reply";

3) "CO Cunamend tried to give Lammers [another inmate's] Kolonapin";

4) An unnamed CO "tried to give Lammers a heart medication not prescribed to Lammers"; and

5) "Lammers has to 'remind' COs to bring scheduled meds at 0900, 1500, and 2000 [hours]," though he "should not have to remind County of Phelps, Phelps County Correctional employees to do their jobs timely."

Filing No. 1 at 1–3.[3]  Plaintiff claims these "HIPPA violations and medication errors also violate the ADA (Americans with Disabilities Act)." Id. at 3.

Additionally, Plaintiff asserts violations of the ADA based on denied medical treatments. Id. Plaintiff alleges he was in PCC custody in January 2023 and was permitted to attend a self-scheduled medical appointment with a podiatrist. Id. PCC took Plaintiff to his appointment, but, at the time, Gregg stated, "He (Lammers) made the

---

[2] The Court assumes "ICE" refers to United States Immigration and Customs Enforcement.

[3] The portions quoted from Plaintiff's handwritten Complaint have been corrected for punctuation, spelling, and capitalization unless otherwise noted.

appointment; take him—he will pay for it." *Id*. Plaintiff was not required to pay financially for the appointment, but he alleges he "did experience retaliation such as but not limited to: (1) late med, (2) having to beg for foot doctor's protocol to be followed, (3) poor attitude from Jail Admin Penny Gregg . . . , [and] (4) COs (in 2023) reiterated to Lammer that as COs 'they were following Gregg's orders in fear of being terminated.'" *Id*. at 4. In June 2024, Plaintiff again made a self-scheduled appointment with the same podiatrist as in 2023, but Plaintiff was told in an electronic kite from CO J. Johnston, at the direction of Johnston's supervisor, that he "will not be transported for self-scheduled medical appointments." *Id*. Plaintiff requested "a detailed policy change date and the 2023 policy with a copy of the new policy," but his requests have been ignored by COs and Gregg. *Id*. at 4–5. Plaintiff also alleges he "has experienced retaliation such as having the hot water for showers to his cell turned off and more medication errors and late medication despite medical staff retraining COs." *Id*. at 5. Plaintiff, however, emphasizes that the "medical staff has done their job with respect, diligence and dignity—the problem is when medical staff leaves the building/jail Lammers is subject to the abuse of Penny Gregg and COs unnamed have no choice but to follow Gregg's orders or face reprisal or termination." *Id*.

For relief, Plaintiff wants PCC to "be required or mandated to keep a CNA [(Certified Nursing Assistant)]/Med Aid on all shifts" and be "available to inmates 24 [hours] a day"; "an investigation by ICE into PCC's negligence under T28-1361 action to compel"; and $37 million in damages. *Id*. at 6.

3

## II. STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. See 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However,

even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III.  DISCUSSION

Plaintiff names the County, PCC, and Gregg in her official and individual capacity as Defendants in this suit. As an initial matter, PCC is not a distinct legal entity subject to suit. See Dan v. Douglas Cnty. Dep't of Corr., No. 8:06CV714, 2009 WL 483837, at *4 (D. Neb. Feb. 25, 2009) ("the Department of Corrections and other units within the DCCC and Douglas County lack the legal capacity to sue or be sued in their own names"); see also Ketchum v. City of West Memphis, Ark., 974 F.2d 81, 82 (8th Cir. 1992) (departments or subdivisions of local government are "not juridical entities suable as such"); Marsden v. Fed. Bureau of Prisons, 856 F.Supp. 832, 836 (S. D. N. Y. 1994) (jails are not entities amenable to suit). Accordingly, any claims against PCC are dismissed. For the reasons that follow, Plaintiff's Complaint fails to state a plausible federal claim for relief against either the County or Gregg, but the Court shall grant Plaintiff leave to amend his Complaint.

**A.  HIPAA Violations**

Plaintiff asserts a claim based on violations of HIPAA. However, HIPAA does not create a private right of action. See Dodd v. Jones, 623 F.3d 563, 569 (8th Cir. 2010); Smith v. Iverson, No. 8:19CV298, 2019 WL 4417548, at *14 (D. Neb. Sept. 16, 2019); Fast v. Fast, No. 8:07CV310, 2007 WL 2417384, at *2 (D. Neb. Aug. 23, 2007); see also Adams v. Eureka Fire Prot. Dist., 352 F. App'x 137, 139 (8th Cir. 2009) ("Since HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action."). Rather, "HIPAA imposes requirements on the Department of

5

Health and Human Services, health plans, and healthcare providers involved in the exchange of health information to protect the confidentiality of such information" and "provides for both civil and criminal penalties for individuals who improperly handle or disclose individually identifiable health information." *Fast*, 2007 WL 2417384, at *2 (citing *Johnson v. Quander*, 370 F.Supp.2d 79, 99 (D.D.C.2005)). As such, Plaintiff cannot state a claim for recovery under HIPAA and such claims are dismissed.

**B. ADA Violations**

Liberally construed, Plaintiff appears to allege Defendants violated Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Act authorizes suits by private citizens for money damages against public entities that violate § 12132. *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a). The ADA defines "public entity" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State." 42 U.S.C. § 12131(1). This term includes instrumentalities of a local government, such as county jails. *See Winters v. Arkansas Dep't of Health & Human Servs.*, 491 F.3d 933 (8th Cir. 2007) (ADA claim asserted against county sheriff in official capacity claiming discrimination on basis of mental illness while in county jail). Because prison officials may not be sued in their individual capacities under Title II of the ADA, the Court considers Plaintiff's ADA claim as being asserted against the County and Gregg in her official capacity only, which is simply another way of suing the County itself. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (Congress'

6

designation of liability for "public entities" under Title II of the ADA necessarily implied that there was no liability for individuals under that statute) (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)); see also *Dinkins v. Correctional Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014) (per curiam).

In order to state a plausible Title II claim under the ADA, Plaintiff must allege plausible facts indicating (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of PCC's services, programs, or activities, or was otherwise subjected to discrimination by PCC; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010); see also *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998).

Here, Plaintiff does not allege that he is disabled nor does he allege any facts to suggest that he is a "qualified individual with a disability."[4] See *Watson v. Kelloggs Co.*, No. 8:20CV126, 2020 WL 2732131, at *5 (D. Neb. May 26, 2020) ("Plaintiff's Complaint contains no facts describing the nature of his disability . . . . Without this basic information, no plausible claim for relief is stated."); *Carlentine v. Duggan*, No. 8:19CV251, 2020 WL 1820129, at *3 (D. Neb. Apr. 10, 2020) (ADA plaintiff failed to state claim upon which relief may be granted because he failed to allege any facts describing "the nature of his disability [and] whether his disability limited his major life activities and, if so, how. . . .").

---

[4] The term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "Major life activities" include such things as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Plaintiff also has not alleged facts showing that he was excluded from participation in or denied the benefits of PCC's services, programs, or activities, or was otherwise subjected to discrimination *because of* his disability.  Plaintiff merely alleges in conclusory fashion that he was at times provided incorrect medication, his medication was not timely provided, and he was denied transportation to a self-scheduled medical appointment with a podiatrist in June 2024.  None of these allegations suggest discriminatory treatment due to any disability of Plaintiff's, and Plaintiff, thus, has failed to state a claim for relief under Title II of the ADA.

Plaintiff also may be attempting to assert a retaliation claim under Title V of the ADA.  "Title V of the ADA prohibits retaliating 'against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA].'" *Rinehart v. Weitzell*, 964 F.3d 684, 689 (8th Cir. 2020) (quoting 42 U.S.C. § 12203(a)).  To state a Title V retaliation claim, Plaintiff must show that "(1) he engaged in statutorily protected activity; (2) adverse action was taken against him; and (3) a causal connection exists between the adverse action and protected activity."  *Id*. (citing *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007)).

Liberally construed, Plaintiff alleges Defendants retaliated against him for attending or seeking to attend a self-scheduled medical appointment and requesting copies of PCC policies regarding transportation to self-scheduled medical appointments.  As it stands, the Court concludes the Complaint's allegations are insufficient to suggest that Plaintiff engaged in any statutorily protected activity under the ADA as Plaintiff does

not allege any facts to indicate he reasonably believed Defendants were engaging in discriminatory activity prohibited by the ADA when they either transported him or failed to transport him to his appointment and failed to provide him the requested transportation policies. See *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999) ("A person cannot show that he engaged in a statutorily protected activity without first demonstrating that he had a good faith reasonable belief that the alleged retaliator was engaging in discriminatory activity."). As such, Plaintiff's Complaint fails to state an ADA retaliation claim.

However, the Court will give Plaintiff leave to file an amended complaint to allege sufficient facts to state plausible ADA claims, if he is truthfully able to do so.

**C. Medication Errors**

Finally, Plaintiff asserts claims for relief based on three separate incidents in which PCC COs tried to give Plaintiff medication that was not prescribed to him and based on Plaintiff not being provided his scheduled medications in a timely manner. Liberally construed, Plaintiff's claims appear to be negligence claims brought pursuant to the PSTCA. This Court's ability to entertain Plaintiff's claims arising under Nebraska tort law cannot be predicated on 28 U.S.C. § 1331 (original jurisdiction) or 28 U.S.C. § 1332 (diversity jurisdiction), but instead must depend on 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

9

When a district court has disposed of all federal claims that conferred original jurisdiction, it may decline to exercise supplemental jurisdiction over remaining state-law claims. 28 U.S.C. § 1367(c)(3). Usually, the dismissal of the federal claims "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016) (quotation omitted). Though the Court has determined Plaintiff's Complaint fails to state a claim for relief under either of the federal statutes cited and is unlikely to exercise supplemental jurisdiction if Plaintiff's federal claims are ultimately dismissed, the Court will briefly examine the sufficiency of Plaintiff's allegations regarding his state-law PSTCA claims.

The PSTCA "is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees." *Smith v. Iverson*, No. 8:19CV298, 2019 WL 4417548, at *17 (D. Neb. Sept. 16, 2019) (quoting *Geddes v. York County*, 729 N.W.2d 661, 665 (Neb. 2007)). see Neb. Rev. Stat. § 13-902 ("[N]o suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the [PSTCA]."). "Where a claim against a political subdivision is based upon acts or omissions of an employee occurring within the scope of employment, it is governed by the provisions of the PSTCA." *Britton v. City of Crawford*, 803 N.W.2d 508, 514 (Neb. 2011). The County is a political subdivision of the State of Nebraska. *See* Neb. Rev. Stat. Ann. § 13-903(1) ("Political subdivision shall include . . . counties . . . ."); *Salts v. Lancaster Cnty.*, 697 N.W.2d 289, 292 (Neb. 2005) ("A county is a political subdivision of the state and has only that power delegated to it by the Legislature.").

Even assuming that Plaintiff can state an actionable claim for negligence against the County or Gregg, the action could be subject to dismissal for noncompliance with the pre-suit notice requirements of the PSTCA. Under Nebraska law, the filing or presentment of a claim to the appropriate political subdivision, while it is not a jurisdictional prerequisite, is a condition precedent to commencement of a suit under the PSTCA. *Keller v. Tavarone*, 628 N.W.2d 222, 230 (Neb. 2001); Neb. Rev. Stat. § 13-920 ("No suit shall be commenced against any employee of a political subdivision for money on account of damage to or loss of property or personal injury to or the death of any person caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment . . . , unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued in accordance with section 13-905."). Plaintiff is not required to plead that he has complied with this statutory requirement, but noncompliance can be raised as an affirmative defense. *See Anderson v. Nebraska*, No. 4:17-CV-3073, 2018 WL 4599832, at *5 (D. Neb. Sept. 25, 2018). Here, it is doubtful that Plaintiff presented his claim and received final disposition of the claim prior to the filing of this suit to the extent Plaintiff's medication error claims relate to his most recent incarceration in PCC in June 2024 and given his vague, unexplained allegation that the "County of Phelps Attorney . . . waived the PSTCA waiting period," Filing No. 1 at 1. *See* Neb. Rev. Stat. § 13-906 ("No suit shall be permitted under the Political Subdivisions Tort Claims Act . . . unless the governing body of the political subdivision has made final disposition of the claim, except that if the governing body does not make final disposition of a claim within six months after it is filed, the

11

claimant may, by notice in writing, withdraw the claim from consideration of the governing body and begin suit under such act . . . .").

### D. Relief Requested

As relief, Plaintiff seeks "a CNA/Med Aide on all shifts," to compel ICE to investigate PCC's negligence, and $37 million in damages. Filing No. 1 at 6. However, the majority of the relief sought by Plaintiff is not available to him.

First, Plaintiff's requests for prospective relief related to his prison conditions of confinement are limited to an order correcting the violation. *See Kimbrough v. Hogan*, No. 8:23CV64, 2024 WL 837168, at *3 (D. Neb. Feb. 28, 2024) (citing 18 U.S.C. § 3626 and cases). Under the Prison Litigation Reform Act ("PLRA"),[5] prospective relief is defined as including "all relief other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7). Therefore, to the extent Plaintiff seeks an investigation by ICE into PCC's negligence, such relief is outside the scope of this Court's authority under the PLRA as it bears no discernible relationship to Plaintiff's claims and would not correct any alleged violation of Plaintiff's rights.

In addition, Plaintiff's release from PCC custody moots his claims for injunctive relief with respect to PCC's provision of specific medical personnel to inmates at all times. *See Randolph v. Rodgers*, 253 F.3d 342, 345 (8th Cir. 2001) (when actions required by injunction would be impossible for correctional-center defendants to execute because plaintiff was moved to another institution, plaintiff's claims for injunctive relief against defendants were moot); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985)

---

[5] Even though Plaintiff has been released from custody, the PLRA continues to apply to his claims. *Sturdevant v. Brott*, No. 19-CV-1068 (ECT/ECW), 2020 WL 1445962, at *3 (D. Minn. Mar. 25, 2020) ("The PLRA applies to any civil lawsuit concerning 'prison conditions' brought under federal law by an incarcerated plaintiff, even if the plaintiff is released from custody before the lawsuit's conclusion.").

12

(concluding that claim for injunctive relief against warden was moot because prisoner was transferred to another prison). As Plaintiff is no longer confined at PCC, he cannot seek injunctive relief against Defendants in his amended complaint.

Lastly, Plaintiff seeks monetary damages, but he does not allege that he suffered any injury as a result of the alleged violations described in his Complaint. The PLRA provides: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). The PLRA therefore limits the available damages in the absence of a physical injury but does not preclude Plaintiff from recovering nominal and punitive damages.[6] *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004).

## IV. OTHER PENDING MOTION

On December 5, 2024, Plaintiff filed notice of his updated address and a motion requesting any correspondence sent from the Court after October 25, 2024, be resent to his updated address or, if none was sent, the Court inform Plaintiff of such for his own records. Filing No. 13. Construing Plaintiff's motion as one for status, the motion is granted. Plaintiff is advised that the Court did not send any correspondence to Plaintiff after October 25, 2024, and this Memorandum and Order will be the first document sent to Plaintiff since that date.

---

[6] As this Court has noted, "punitive damages are potentially available in § 1983 actions, although on a limited basis, [and] they have the potential to survive initial review." *Robinson v. Carson*, No. 8:23CV137, 2023 WL 6880153, at *3 n.9 (D. Neb. Oct. 18, 2023) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 929 (8th Cir. 2002) ("Unlike compensatory damages, which are mandatory and are awarded as a matter of right once liability is established, punitive damages are awarded or rejected in a particular case at the discretion of the fact finder once sufficiently serious misconduct by the defendant is shown.")).

13

## V. CONCLUSION

Plaintiff's Complaint fails to state a plausible claim for relief under federal law against Defendants and is subject to dismissal under 28 U.S.C. § 1915(e)(2). On the Court's own motion, Plaintiff will be given 30 days to amend his Complaint to allege sufficient facts to state plausible federal claims for relief against the County and Gregg in her official and/or individual capacity. However, Plaintiff's claims against PCC, his HIPAA claims, and his claims for prospective relief will be dismissed without prejudice and without leave to amend. If Plaintiff decides to file an amended complaint, Plaintiff must include all of the claims he wishes to pursue against the Defendants in the amended complaint, and he should be mindful to explain what each Defendant did to him, when the Defendant did it, and how the Defendant's actions harmed him.

IT IS THEREFORE ORDERED that:

1. Plaintiff's Motion for Leave to Proceed in Forma Pauperis, Filing No. 12, is granted, and Plaintiff is given leave to proceed in forma pauperis as a non-prisoner. The Clerk of the Court is directed to update the Court's records to reflect that Plaintiff is no longer liable for the remaining balance of the filing fee.

2. Plaintiff's motion, Filing No. 13, construed as a motion for status, is granted consistent with this Memorandum and Order.

3. Plaintiff's claims against Phelps County Corrections, his HIPAA claims, and his claims for prospective relief are dismissed without prejudice and without leave to amend. The Clerk of the Court is directed to remove Phelps County Corrections as a defendant in this case.

4. Plaintiff shall have 30 days to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.

5. In the event that Plaintiff files an amended complaint, Plaintiff shall restate the relevant allegations of the Complaint, Filing No. 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

6. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) in the event he files an amended complaint.

7. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

8. The Clerk of Court is directed to set a pro se case management deadline using the following text: **July 10, 2025**: check for amended complaint.

Dated this 10th day of June, 2025.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge